## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JESSICA NEWBERRY,

      Plaintiff,

v.                                        Civ. No. 2:24-20 GJF/JHR

JOHN MASCARO and
CITY OF ELEPHANT BUTTE,

      Defendants.

### MEMORANDUM OPINION AND ORDER ON
### DEFENDANT MASCARO'S MOTION TO DISMISS

THIS MATTER is before the Court on Defendant Mascaro's Motion to Dismiss the Plaintiff's Amended Complaint ("the Motion"), which is fully briefed. ECFs 41, 48, 52. Having thoroughly considered the motion, briefs, pleadings, and applicable law, the Court will grant the Motion in part and deny it in part. Specifically, the Court will grant the Motion with respect to Counts I–IX and XI–XII and deny it with respect to Count X.

## I.    FACTUAL ALLEGATIONS[1]

In 2015, Plaintiff, a Mexican-American woman with brown skin, was hired by the City of Elephant Butte ("the City") as a utility clerk. ECF 38 ¶¶ 6, 9. By July 2021, she had worked her way up to Deputy Clerk. *Id*. ¶ 8. At all relevant times, Plaintiff was over 50 years of age. *Id*. ¶ 9.

In May 2022, the City hired Defendant John Mascaro, a white male in his 50s, to oversee the fire department. *Id*. ¶ 10, 16 Initially, Plaintiff and Defendant Mascaro got along well, but soon Defendant Mascaro "began making vulgar comments of a sexual nature to and in front of" Plaintiff.

---

[1] The facts that follow come from Plaintiff's Amended Complaint [ECF 38]. The Court must accept all well-pleaded allegations as true, viewing the allegations in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

*Id*. ¶ 12. For instance, in or around May 2022, when a woman from a utility company came into City Hall, Defendant Mascaro said to Plaintiff, "Did you see her ass?!? She has a good ass!" *Id*. ¶ 13. On a separate occasion, when a State Senator attended a City Council meeting on official business, Defendant Mascaro stopped Plaintiff in the hallway to comment on the Senator's "ass." *Id*. ¶ 14. And around the same time, Defendant Mascaro commented on a lesbian couple, including one woman who was his subordinate in the fire department: "She's cute. They're so cute." *Id*. ¶ 15.

Also in the May 2022 timeframe, Defendant Mascaro was rumored to have focused his attention on a white woman in her 30s who was his subordinate in the fire department. *Id*. ¶ 16. According to the rumor, the subordinate was uncomfortable when Defendant Mascaro leaned over her so closely that his belly touched her back. *Id*. Responding to the rumor, Defendant Mascaro exclaimed something along the lines of "I wouldn't touch her. She's too fat!" *Id*. ¶ 17.

Plaintiff asked Defendant Mascaro directly to stop making sexualized comments in the workplace. *Id*. ¶ 18. According to Plaintiff, Defendant Mascaro did not stop and instead attempted to justify his behavior by explaining that he had "an open marriage." *Id*. ¶ 20.

In or around August 2022, the City hired as its new Treasurer a white woman in her 30s. Defendant Mascaro repeatedly commented to Plaintiff about the new Treasurer's "ass" and how "good it looked." *Id*. ¶ 23. Defendant Mascaro also rearranged the offices in City Hall so that the Treasurer's office would be next to his. *Id*. ¶ 24.

After speaking directly to Defendant Mascaro failed to curb his sexualized comments, Plaintiff took her concern "up the chain of command." *Id*. ¶ 25. After she complained, Defendant Mascaro "began his campaign of retaliation against her." *Id*. ¶ 26.

By September 2022, Defendant Mascaro had become City Manager. *Id*. ¶ 28. In that role, he abused his authority to get rid of Plaintiff because she had challenged his behavior and also so that he could replace her with a younger white woman. *Id*. ¶ 28. Plaintiff was terminated by

October 2022. *Id*. ¶ 30.

## II.    APPLICABLE LAW

### A.  Rule 12(b)(1) Standard

Exhaustion of administrative remedies serves as a jurisdictional bar to filing suit under the New Mexico Human Rights Act ("NMHRA"), whereas it is an affirmative defense under Title VII and related federal statutes. *See Mitchell-Carr v. McLendon*, 980 P.2d 65, 70 (N.M. 1999) (explaining that compliance with NMHRA exhaustion procedures is "effective to give the district court jurisdiction" over a NMHRA claim); *Morgan v. Cmty. Against Violence*, No. 23-cv-353-WPJ/JMR, 2023 WL 6976510, at *1 (D.N.M. Oct. 23, 2023) (explaining that exhaustion is a "jurisdictional bar" under the NMHRA and an "affirmative defense" under Title VII); *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543 (2019) (holding that Title VII's "charge-filing instruction is not jurisdictional"); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 n.10 (10th Cir. 2018) (explaining exhaustion is an affirmative defense under Title VII).

Thus, although Defendant Mascaro brought his Motion under Rule 12(b)(6), his argument that Plaintiff failed to properly exhaust her NMHRA claims against him is properly understood as a challenge to subject matter jurisdiction under Rule 12(b)(1). *See Mitchell-Carr*, 980 P.2d at 71; *see also Vigil v. City of Espanola*, No. 1:20-cv-01265-PJK-SMV (D.N.M. Jan. 13, 2021) (explaining that a failure to exhaust argument is "a challenge to subject-matter jurisdiction under Rule 12(b)(1)" and analyzing those arguments under Rule 12(b)(1) even though the defendants brought their motion under Rule 12(b)(6)) (citing *Mitchell-Carr*, 980 P.2d at 71). *But see Marquez v. Albuquerque Public Schs.*, No. 1:18-cv-00133-PJK-SCY, 2020 WL 1703351, *7 (D.N.M. Apr. 8, 2020) (concluding, in a case involving claims under Title VII and NMHRA, that "failure to exhaust administrative remedies is not a jurisdictional question in this circuit) (citing *Lincoln*, 900

F.3d at 1185–86); *Hix v. SKS Devel. LLC*, No. 1:24-cv-00175-KWR-JFR, 2024 WL 3488031, *5 (D.N.M. July 19, 2024) (same).

Motions to dismiss under Rule 12(b)(1) "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1265 (D.N.M. 2011) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (internal citations omitted)). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true." *Id.* (quoting *Alto Eldorado Partners v. City of Santa Fe*, No. Civ. 08-0175 JB/ACT, 2009 WL 1312856, at *8 (D.N.M. Mar. 11, 2009), *aff'd*, 634 F.3d 1170 (10th Cir. 2011) (internal citations omitted)). "But when the attack is factual, a district court may not presume the truthfulness of the complaint's factual allegations" and may "allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.* (citation omitted). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion." *Id.* (citation omitted). Here, Defendant Mascaro attacks the facts upon which subject matter jurisdiction is based—that is, whether Plaintiff exhausted her claims against him.

When disputed, as they are here, jurisdictional facts must ultimately be established by a preponderance of the evidence. *Campos*, 828 F. Supp. 2d at 1271. The Court has discretion in determining the procedure for consideration of a motion under Rule 12(b)(1). *See FDIC v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992). For instance, a court has broad discretion to consider affidavits, an administrative record, or other documents necessary to resolve disputed jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Here,

because the Court is deciding Defendant Mascaro's Motion based on submitted materials, without a pretrial evidentiary hearing, Plaintiff need only make a *prima facie* showing of subject matter jurisdiction. *Oaklawn Apartments*, 959 F.2d at 174; *see also Kibler v. Genuine Parts Co*., No. CIV 17-0486 RB/SCY, 2017 WL 4410786, at \*4 (D.N.M. Oct. 2, 2017).

### B.  Rule 8 and Rule 12(b)(6) Standards

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The required statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

A Rule 12(b)(6) motion prompts a court to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003). When ruling on such a motion, a court accepts "all well-pleaded factual allegations in the complaint" and construes them "in the light most favorable" to the plaintiff. *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1305 (10th Cir. 2020). "Well-pled" means that allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Indeed, courts "disregard conclusory statements and look only to whether the remaining[ ] factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (quotation

omitted). To survive a motion to dismiss, the plaintiff must put forth facts stating a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. 678. While plausibility is not the same as probability, it is more than a "sheer possibility." *Id.*

Courts should be hesitant to dismiss a claim with prejudice under Rule 12(b)(6) and should instead err on the side of allowing a plaintiff to amend. *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022). But a court should dismiss a claim with prejudice when it finds that it would be futile to allow the plaintiff to amend that claim. *Id.* at 1027.

### C.  Qualified Immunity

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, [courts] will also review this defense on a motion to dismiss." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citation omitted). When a defendant raises the defense of qualified immunity on a motion to dismiss, courts employ a two-part test to determine whether it applies. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Under this test, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a [federal] statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Courts "have discretion to 'decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Brown*, 662 F.3d at 1164 (brackets omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

### III.  PARTIES' PRIMARY ARGUMENTS

### A.  Defendant Mascaro's Contentions

Defendant Mascaro first asserts that Plaintiff failed to exhaust her administrative remedies,

6

because she did not name him in her administrative complaint. ECF 41 at 3–5; ECF 52 at 2–5. As to the merits of Plaintiff's sex discrimination, retaliation, age discrimination, and race discrimination claims, Defendant Mascaro contends that Plaintiff has failed to plausibly state a claim. ECF 41 at 6–14; ECF 52 at 5–13. In addition, Defendant Mascaro argues that Plaintiff asserts no facts to support her First Amendment retaliation claim and therefore fails to overcome his assertion of qualified immunity. ECF 41 at 10–11. Next, Defendant Mascaro insists that Plaintiff's procedural due process claim fails because Plaintiff was an at-will employee not entitled to due process at the time of her termination. *Id*. at 14–15; ECF 52 at 13. Finally, Defendant Mascaro describes Plaintiff's substantive due process claim as an "improper add-on claim" that lacks an independent basis and therefore fails to state a claim. ECF 41 at 15–16; ECF 52 at 13–14.

### B. Plaintiff's Contentions

In response, Plaintiff voluntarily abandons her First Amendment retaliation claim and clarifies that she does not assert claims under Title VII or the Age Discrimination in Employment Act ("ADEA") against Defendant Mascaro. ECF 48 at 1 n.1. As to the remaining claims, Plaintiff contends that she has both exhausted her administrative remedies and plausibly stated a claim. *Id*. at 1–14. Next, Plaintiff maintains that at all times relevant to her procedural due process claim she was employed by a City government and enjoyed a constitutionally-protected property interest in continued employment. *Id*. at 14. Finally, she insists that the basis of her substantive due process claim is independent from her procedural due process claim and, further, that she had a substantive due process right not to be terminated for arbitrary and capricious reasons. *Id*. at 14–16.

## IV. ANALYSIS

### A. First Amendment Retaliation and Title VII Claims against Defendant Mascaro

At the outset, the Court observes that Plaintiff "voluntarily abandons her claim for First

Amendment Retaliation." *See id.* at 1 n.1. Moreover, Plaintiff clarifies that no Title VII or ADEA claim is asserted against Defendant Mascaro, as he is not the proper defendant for such claims. *Id.* (citing *Mobley v. Donahue*, 498 F. App'x 793, 799 n.4 (10th Cir. 2012) (quoting 42 U.S.C. 2000e-16(c))). Accordingly, the Court dismisses with prejudice Count V (First Amendment Retaliation) and, to the extent they are asserted against Defendant Mascaro, Count I (Title VII Sex Discrimination), Count III (Title VII Retaliation), Count VI (ADEA), and Count VIII (Title VII Race Discrimination).

### B.  Exhaustion of NMHRA Claims Against Defendant Mascaro

Individual liability claims are cognizable under the NMHRA, unlike its federal counterparts. *Compare Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) ("personal capacity suits against individual supervisors are inappropriate under Title VII"), *with Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001) (explaining that the New Mexico Supreme Court has "acknowledged the possibility of individual liability for [NMHRA] discrimination claims"). But to bring an NMHRA suit in district court, a plaintiff is required to exhaust the administrative grievance process with respect to each defendant named in the district court lawsuit. *See Luboyeski v. Hill*, 872 P.2d 353, 356 (N.M. 1994); *see also Sonntag*, 22 P.3d 188 (dismissing individual defendant because the plaintiff had not named that defendant in her administrative complaint to the NMHRD). The burden to prove exhaustion lies with the plaintiff. *Rist v. Design Ctr. at Floor Concepts*, 314 P.3d 681, 685 (N.M. Ct. App. 2013).

To exhaust remedies under the NMHRA, a plaintiff must (1) file a complaint with the New Mexico Human Rights Bureau ("NMHRB") or the Equal Employment Opportunity Commission ("EEOC") that includes sufficient allegations to support the complaint; and (2) receive an order of non-determination from the NMHRB. *See Mitchell-Carr*, 980 P.2d at 70. The NMHRA further

provides that the written complaint must "state the name and address of the person alleged to have engaged in the discriminatory practice, all information relating to the discriminatory practice and any other information that may be required." N.M. Stat. Ann. § 28-1-10(A).

With respect to Plaintiff's NMHRA claims, the Amended Complaint alleges that she "exhausted her administrative remedies." ECF 38 ¶¶ 40, 45, 53, 60. Insisting that the Court must take as true these "factual allegations of exhaustion," Plaintiff contends that these allegations alone make dismissal for lack of exhaustion inappropriate. ECF 48 at 2. Defendant Mascaro acknowledges that "[u]pon information and belief, Plaintiff did file a Complaint with the EEOC" but argues that she "did not name [him] in her administrative complaint and he never received any notice of that action." ECF 41 at 3. As a result, Defendant Mascaro maintains that Plaintiff's NMHRA claims remain unexhausted and should be dismissed. *Id.*

Plaintiff's allegations that she "exhausted her administrative remedies" amount to legal conclusions, which need not be taken as true and do not resolve the parties' dispute as to exhaustion. *See Twombly*, 550 U.S. at 555. And Plaintiff has not otherwise pled sufficient facts to plausibly state that she exhausted her NMHRA claims against Defendant Mascaro. *Cf. Campos*, 828 F. Supp. 2d at 1271 (concluding that the plaintiffs' allegations that they "timely filed charges of national origin discrimination with the [EEOC] and satisfied all administrative requirements for filing . . . suit" were "conclusory" and failed to satisfy the plaintiffs' burden to demonstrate exhaustion); *Delopez v. Bernalillo Public Schs*., No. 19-735 JCH-KK, 2021 WL 873354, at *7 (D.N.M. Mar. 9, 2021) (reasoning that the "Plaintiff's Complaint on its face . . . [did] not establish exhaustion under the NMHRA for any of the [d]efendants," where she alleged that she received a right-to-sue letter from the EEOC but did not allege that she received an order of non-determination from the NMHRB).

Although she initially takes the position that her Amended Complaint settles the matter, Plaintiff also attaches as exhibits to her response brief both the Charge of Discrimination that she filed with NMHRB and the NMHRB's February 19, 2024 Order of Non-Determination. *See* ECF 49. In Plaintiff's view, the Court may consider the documents without converting Defendant Mascaro's Motion into one for summary judgment because they are central to her claims and because the Charge is a matter of public record. ECF 48 at 4 n.4 (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)). In reply, Defendant Mascaro does not argue that the Court may not consider these documents under the motion to dismiss standard, nor does he dispute the documents' authenticity. *See* ECF 52 at 2–5.

For four reasons, the Court looks beyond the Amended Complaint to consider Plaintiff's NMHRB Charge and the NMHRB's Order of Non-Determination without converting the motion into one for summary judgment: (1) because Plaintiff's Amended Complaint alleges that she exhausted her administrative remedies with respect to her NMHRA claims; (2) because the NMHRB Charge is a matter of public record; (3) because there is no dispute as to the authenticity of those documents; and (4) because New Mexico courts have held that exhaustion of NMHRA claims is jurisdictional, and courts have broad discretion to consider documents necessary to resolve disputed jurisdictional facts. *See Rodriguez v. Rich*, No. 21-cv-01129 JCH/KK, 2023 WL 1861422, at *1 (D.N.M. Feb. 9, 2023) (considering NMHRB charges on a motion to dismiss and reasoning that "no conversion is required . . . when a court considers information that is subject to proper judicial notice, . . . or documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned" (citing *Tellabs*, 551 U.S. at 322 (2007); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Pace v. Swerdlow*, 519 F.3d

1067, 1072 (10th Cir. 2008))); *Mitchell-Carr*, 980 P.2d at 71 ("[E]xhaustion of administrative remedies is a prerequisite to suit under the NMHRA, and a failure to exhaust administrative remedies may mean the court lacks subject-matter jurisdiction.") (citation omitted); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (explaining that courts have broad discretion to consider documents necessary to resolve disputed jurisdictional facts).

Plaintiff filed her NMHRB Charge on August 18, 2023, identifying the "Employer" who discriminated against her and others as the City of Elephant Butte. ECF 49 at 2. Plaintiff's Charge alleged that she was discriminated against based on race, color, sex, age, and retaliation from May 1, 2022 to October 29, 2022. *Id*. As to the "particulars" of that discrimination, she alleged:

> After more than seven years working at the City of Elephant Butte, I was promoted to City Clerk, which was an allegedly at-will position. The promotion was a pretext to move me into an allegedly at-will position in order to more easily, but wrongfully, terminate my employment. This was done in retaliation for my having recently complained about sexual harassment by the Fire Chief. This was also done as discrimination against me because of my race and color (Mexican American with brown skin), my sex (woman), and my age (over 40). These actions violated my rights under the New Mexico Human Rights Act, Title VII, and the ADEA.

*Id*.

Plaintiff contends that her reference to "sexual harassment by the Fire Chief" sufficiently identified Defendant Mascaro such that she exhausted her administrative remedies for the NMHRA claims she now asserts against him. ECF 48 at 2–3 (citing *Campos*, 828 F. Supp. 2d at 1276–77). But Defendant Mascaro insists that he received neither prior notice as to Plaintiff's NMHRB Charge nor any opportunity to conciliate at the administrative level. ECF 41 at 4. As a result, he insists that Plaintiff's NMHRA claims against him remain unexhausted. *Id*. (citing *Varoz v. Albuquerque Pub. Sch. Bd*., No. A-1-CA 37141, 2019 WL 13155909, 2019 N.M. App. Unpub. LEXIS 514, at *5–6 (N.M. Ct. App. Dec. 20, 2019); *Phillips v. Galactic Enters., LLC*, No. 2:23-cv-0956 MLG/DLM, 2024 WL 1621344, at *6, 2024 U.S. Dist. LEXIS 38677, at *16 (D.N.M.

Mar. 4, 2024) (quoting *Sonntag*, 22 P.3d 1193)).

The New Mexico Supreme Court has had occasion to consider whether NMHRA claims were exhausted against individual defendants not named in an administrative charge. In *Sonntag v. Shaw*, the court held that "[u]nder the NMHRA, a plaintiff must exhaust his or her administrative remedies against a party before bringing an action in district court against that party. . . ." 22 P.3d at 1193. Based on this requirement, the court determined that "[i]n neglecting to name [the corporation's owner] personally, [the plaintiff] failed to exhaust her administrative remedies against him[, and t]he trial court therefore erred in allowing [the p]laintiff's discrimination claim to be brought against [the owner] individually." *Id*. at 1193. Similarly, in *Luboyeski v. Hill*, the New Mexico Supreme Court considered an administrative complaint "naming the School System as respondent and claiming that Kermit Hill, another teacher at the school where [the plaintiff] taught, had touched and made advances toward her in sexually inappropriate ways." 872 P.2d at 354. Because the plaintiff did not name Hill as a respondent in the administrative proceeding, the court concluded that she had not exhausted her administrative remedies against him. *Id*. at 355.

Following *Sonntag* and *Luboyeski*, Judge Browning predicted in *Campos* that the New Mexico Supreme Court "would likely recognize that complaining about a person in the text of a[n administrative] charge would be sufficient to name them as a respondent in the case." 828 F. Supp. 2d at 1277 (citing *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980)). In *Campos*, two plaintiffs misspelled the name of the same respondent in their administrative charges— mistakenly referring to Ken Shull as Ken "Schultz" and Ken "Shall." *Id*. at 1275. Despite these misspellings, both plaintiffs specifically described Mr. Shull's alleged discriminatory conduct in the text of their charges. *Id*. Acknowledging the New Mexico Supreme Court's previous holdings in *Sonntag* and *Luboyeski* that a plaintiff cannot name an individual defendant in a suit without

naming him as a respondent in the NMHRB charge, Judge Browning observed that "[n]o New Mexico cases directly address the issue of *misnaming* an individual defendant in a[n NMHRB] charge." *Id*. at 1274 (citing *Luboyeski*, 872 P.2d at 355) (emphasis added); *see also id*. at 1267 (citing *Sonntag*, 22 P.3d 1193).

Judge Browning identified two exceptions to the requirement that a person filing a discrimination charge must name the individual defendant in the charge: (1) a charge in which the individual defendant is "mentioned in the text of the charge"; and (2) a charge in which there is "sufficient identity of interest between the respondent and the [individual] defendant to satisfy the intention of the [applicable statute] that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." *Id*. at 1276 (citing *Romero*, 615 F.2d at 1311). With respect to the latter, Judge Browning set out the identity of interest factors for consideration, but he emphasized that those factors are relevant in the context of a charge that *entirely omits* an individual defendant's name. *Id*. at 1276. Because the plaintiffs in *Campos* mentioned the individual defendant in their administrative charges, albeit using erroneous surnames, Judge Browning analyzed NMHRA exhaustion under the first exception: when an individual defendant is "mentioned in the text of the charge." *Id*. at 1276–77 (citation omitted).

First, he concluded that "the Supreme Court of New Mexico would likely recognize that complaining about a person in the text of a charge would be sufficient to name them as a respondent in the case." *Id*. (citation omitted). In reaching this conclusion, he observed that Title VII, unlike the NMHRA, forbids holding supervisors liable for discrimination, meaning that a person who files a discrimination charge with the EEOC cannot name an individual respondent in her charge, even if she intends to pursue NMHRA claims against that person as a defendant. *See id*. In Judge Browning's view, foreclosing an NMHRA claim against an individual defendant on the basis that

13

they were not named as a respondent in an EEOC charge would "frustrate the work-sharing agreement between the EEOC and the NMHRD in which each agency designates the other as its agent for the purpose of receiving and drafting charges." *Id*. at 1277 (citing *Mitchell-Carr*, 980 P.2d at 69). Notably, he went on to conclude that "when the person filing the charge has misspelled the name of an individual respondent in the charge, the Supreme Court of New Mexico would likely consider whether the misspelling prevented the defendant from having notice of the charge or frustrated the respective agency's investigation and attempted reconciliation of the matter." *Id*. (citation omitted). Noting the parties' acknowledgement that "there [was] only one [Ken] Shull or similarly sounding surnamed individual," Judge Browning determined that the New Mexico Supreme Court would conclude that Ken Shull had notice of the discrimination charges against him and that the slight misspellings of his surname in two of the three plaintiffs' administrative charges would not have frustrated the agency's investigation or attempted conciliation. *Id*. at 1277–78. Accordingly, Judge Browning denied the defendants' motion to dismiss for failure to exhaust as to defendant Shull. *Id*.

In forecasting that the New Mexico Supreme Court would consider NMHRA claims against an individual defendant exhausted when an individual is referenced in the text of an administrative charge, Judge Browning relied upon *Romero v. Union Pacific Railroad*, 615 F.2d 1303 (10th Cir. 1980). *See Campos*, 828 F. Supp. 2d at 1267–77 (citation omitted). In *Romero*, the defendants moved for summary judgment on the plaintiff's Title VII retaliation claims, alleging among other things that the federal court lacked subject matter jurisdiction over claims against individual defendants and, relatedly, that the plaintiff failed to exhaust his administrative remedies. *Romero*, 615 F.2d at 1303. On appeal, the Tenth Circuit observed that by entering summary judgment in favor of the defendants, "the trial court found by implication that subject matter jurisdiction

exist[ed] under Title VII over the individual defendants notwithstanding the plaintiff's failure to name them in the EEOC charges he filed." *Id*. at 1311.

For its part, the Tenth Circuit was not satisfied that the record demonstrated the presence of subject matter jurisdiction. *Id*. Nonetheless, the Tenth Circuit explained that it was "inclined to agree that omission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII." *Id*. at 1312. In expressing this inclination, the court observed that administrative complaints are typically drafted by "laymen" and "must be liberally construed in order to accomplish the purpose of" the applicable statutes. *Id*. at 1311. As such, the court indicated that there exist "narrow exceptions to the strict requirement that each defendant [be] specifically named as [a] respondent in the [administrative charge] where the defendant [is] informally referred to in the body of the charge . . . , or where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention . . . that the defendant have notice of the charge and the [administrative agency] have an opportunity to attempt conciliation." *Id*. at 1311 (citing *Glus v. G.C. Murphy Co*., 562 F.2d 880 (3d Cir. 1977)). As to the latter, the court outlined the four principal identity-of-interest factors that apply when evaluating the failure to name a party in an administrative charge. *See id*. at 1312 (citing *Glus*, 562 F.2 at 888). Nevertheless, because it is "the province of the district court to initially . . . make the determination of jurisdiction," the court remanded for further proceedings without resolving the exhaustion issue. *Id*.

Here, Defendant Mascaro argues that Plaintiff fails to establish any of the four identity-of-interest factors that courts consider in evaluating exhaustion despite a claimant's failure to name an individual defendant in her administrative charge. ECF 41 at 3–4 (citing *Knowlton v. Teltrust Phones, Inc*., 189 F.3d, 1177, 1185 (10th Cir. 1999)). But for her part, Plaintiff insists that the

15

"identity of interest exception is not the [exception] that matters" in the context of her exhaustion of claims against Defendant Mascaro. ECF 48 at 3. Instead, she urges the Court to apply the separate exception referred to in *Campos* for circumstances in which the individual defendant is "mentioned" or "referred to" in the administrative charge. ECF 48 at 3 (citing *Campos*, 828 F. Supp. 2d at 1276–77). Although there is some support for this separate exception to which Plaintiff refers in *Campos* and *Romero*, factual distinctions exist between the administrative charges at issue in those cases and the Charge at issue here. Thus, it is not immediately clear that this separate exception applies.

Plaintiff argues that because her administrative Charge "mentions and refers to 'the Fire Chief[,]'" it is adequate to exhaust her NMHRA claims against Defendant Mascaro. ECF 48 at 3. More accurately, though, Plaintiff's NMHRB Charge alleges that she was promoted to City Clerk, an allegedly at-will position, and terminated "in retaliation for . . . having complained about sexual harassment by the Fire Chief." ECF 49 at 1. Plaintiff neither alleges that "the Fire Chief" was involved in her termination nor that he retaliated against her. ECF 52 at 2. And yet, as Defendant Mascaro observes, an administrative "charge must contain facts concerning the discriminatory and retaliatory actions underlying each [NMHRA] claim." *Id*. (citing *Jones v. UPS, Inc*., 502 F.3d 1176, 1186 (10th Cir. 2007), *overruled on other grounds by Lincoln*, 900 F.3d 1166). By contrast, the administrative charges in *Campos* did not omit the name of the individual defendant against whom they sought to assert discrimination claims. 828 F. Supp. 2d at 1275. Rather, two of the three plaintiffs simply *misspelled* his surname, whereas the third plaintiff used the correct surname. *Id*. Moreover, each of the three plaintiffs specifically described in the body of their charges the discriminatory conduct in which the individual defendant allegedly engaged. *Id*. It was these distinguishable circumstances that satisfied Judge Browning that the individual defendant had

16

notice of the discrimination charges against him, and the EEOC had an opportunity to conciliate those charges. *Id.* at 1275–76. Here, in contrast, Plaintiff did not misspell Defendant Mascaro's name; she omitted it altogether.  ECF 49 at 2. Further, she failed to specifically describe the allegedly discriminatory conduct that she attributed to him. *Id.*

*Romero* is likewise of little help to Plaintiff.  There, the Tenth Circuit indicated that, for purposes of exhaustion, there is a "narrow exception[] to the strict requirement that each defendant [be] specifically named" in a charge. 615 F.2d at 1311. But critically, the court did not define the parameters of that exception or even apply it. *See id.* at 1311–12.  Instead, the court remanded for the district court to determine the issue in the first instance. *Id.* at 1312.

In support of her position that her reference to the "Fire Chief" suffices for exhaustion, Plaintiff relies upon *Campos* and *Romero*. ECF 48 at 3. Neither party points to any other cases to guide the Court's application of the separate exhaustion exception to which *Campos* and *Romero* allude. Decisions from this District offer a study of contrasts, however.

First, in *Jacober v. Taxation and Revenue Department*, No. 02-1585 WJ/ACT, 2003 WL 27384893 (D.N.M. Oct. 9, 2003), the plaintiff filed a NMHRB charge naming as a respondent only the New Mexico Taxation and Revenue Department. *Id.* at 1. In her description of the discrimination she endured, the plaintiff alleged that her "supervisor" discriminated against her but did not provide his name. *Id.* She did attach to her charge, however, an affidavit in which she identified her supervisor by name and outlined his alleged discriminatory actions. *Id.* at 1-2. Under those circumstances, Judge Johnson determined that there was "an adequate factual basis upon which to find that the plaintiff had exhausted her administrative remedies under the NMHRA with regard to" the supervisor named in the affidavit. *Id.* at 6; *see also Perez v. Cent. Reg'l Educ. Coop.*, No. CIV-01-0545 WJ/RLP, 2003 WL 27385372, at *2 (D.N.M. Mar. 4, 2003) (concluding that the

plaintiff exhausted her remedies by attaching to her charge an affidavit that identified by name the "Executive Director" to whom she referred in the text of her administrative charge); *Stailey v. Gila Reg'l Med. Ctr.*, No. 16-0485 JCH/GJF, 2017 WL 3602057, at *8 (D.N.M. Feb. 21, 2017) (reasoning that the plaintiff "overcomes a deficiency" in her administrative charge "by identifying individuals *by name* in an attachment to that form" (emphasis added)). By contrast, Plaintiff makes no assertion that she attached to her NMHRA charge any affidavit or document identifying the "Fire Chief" by name or describing the discriminatory or harassing conduct in which he allegedly engaged.

Moreover, in *Lucero v. Board of Directors of Jemez Mountains Cooperative, Inc.*, 495 F. Supp. 3d 1135 (D.N.M. 2020), Judge Browning revisited exhaustion of discrimination claims against an individual defendant. There, he reasoned that identifying individual defendants *by name* in the text of an administrative charge suffices for exhaustion "as long as the facts [in the charge] describe the conduct [the individual defendants] allegedly committed." *Id*. at 1179. Because the charge's text did not allege that the individual defendants *discharged* the plaintiff, however, Judge Browning concluded that the text did not describe the discriminatory discharge claim in a manner sufficient to exhaust administrative remedies as to that claim.[2] *Id*. In contrast to the complainant in *Lucero*, Plaintiff here did not supply the *name* of the "Fire Chief" in the text of her NMHRB Charge. *See* ECF 49 at 2. And similar to the *Lucero* plaintiff, she failed to describe her NMHRA claims against the "Fire Chief" or allege that he was responsible for her termination. *Id*. Indeed, Plaintiff's NMHRB charge is entirely devoid of facts to support her NMHRA claims against

---

[2] Because the plaintiff "added the word 'harassment' in his discriminatory discharge claim," Judge Browning did not foreclose the possibility that the plaintiff could bring a claim under a harassment theory against the individual defendants specifically named in the charge's text. *Lucero*, 495 F. Supp. 3d at 1180. Nevertheless, he stopped short of finding exhaustion as to the harassment claim, concluding instead that the plaintiff had not alleged harassment so severe and pervasive to support a claim under the NMHRA in any event. *Id*. at 1180–81.

Defendant Mascaro. *See id*. At most, she references a past complaint about sexual harassment by "the Fire Chief," but does so without detailing any of the underlying conduct at issue. *Id*.

Ultimately, a review of *Campos*, *Romero*, and the other cases discussed above leaves the Court unconvinced that Plaintiff has met her burden to demonstrate exhaustion by virtue of some separate exception that operates independently from the identity of intertest doctrine. In the absence of an applicable exception to the strict requirements of exhaustion, the Court concludes that Plaintiff failed to fully comply with exhaustion requirements by (1) failing to name Defendant Mascaro as a respondent in her NMHRB Charge; *and* (2) failing to include in her NMHRB Charge the allegations against Defendant Mascaro that she includes in her Amended Complaint. *See Hix*, 2024 WL 3488031, at *8 (citations omitted). In other words, Plaintiff did not "state the name and address of the person alleged to have engaged in the discriminatory practice, all information relating to the discriminatory practice and any other information that may be required" as N.M. Stat. Ann. § 28-1-10(A) requires. In addition, given the purpose of the exhaustion requirements, Plaintiff's NMHRA claims against Defendant Mascaro are necessarily limited by the scope of the administrative investigation that took place following her NMHRB Charge. The Court cannot conclude that her reference to previous complaints "about sexual harassment by the Fire Chief" was enough to put Defendant Mascaro on notice of the claims against him or to allow the administrative agency to conciliate those claims. Indeed, Defendant Mascaro represents that he enjoyed no such notice or conciliation opportunity [ECF 41 at 4], and Plaintiff makes no representations or assertions to the contrary [*see* ECF 48 at 4].

Plaintiff makes a final "alternative argument" in an attempt to salvage her claims against Defendant Mascaro from dismissal for failure to exhaust. *See id*. at 3. She contends that, even if the Court were to determine that her reference to "the Fire Chief" was inadequate to exhaust her

remedies against Defendant Mascaro, she should be excused from exhaustion because her "Charge of Discrimination form failed to provide . . . a fair and adequate opportunity to exhaust administrative remedies against [Defendant Mascaro]." *Id*. (quoting *Lobato v. State Env't Dep't*, 267 P.3d 65, 69 (N.M. 2011) and citing *Flores v. City of Farmington*, No. 1:18-cv-00402 KWR-JFR, 2021 U.S. Dist. LEXIS 18971, at *9, 2021 WL 308979 (D.N.M. Jan. 30, 2021)). That is, because she "used the EEOC Charge form, which did not ask for the 'name' of any individual," Plaintiff insists that the New Mexico Supreme Court's holding in *Lobato* dictates that she was not required to exhaust her claims against Defendant Mascaro before asserting them in this Court. *Id*. at 4.

To be sure, *Lobato* is instructive when a claimant fails to name an individual defendant in an administrative charge and later wishes to sue that individual under the NMHRA. *Lobato* arose on certification from this District to answer two questions: (1) whether the NMHRB form, which instructs complainants to identify the discriminating agency but not the individual actor, provides a "fair and adequate opportunity to exhaust administrative remedies against individual actors under the NMHRA"; and (2) if the form was inadequate, what remedy was available. *Lobato*, 267 P.3d at 67. Emphasizing that nothing on the charge form instructed the plaintiff to identify individual employees involved in the alleged discrimination, the New Mexico Supreme Court concluded that the form was "inadequate and misleading" and "create[d] a trap for unwary claimants to forfeit their statutory rights and judicial remedies." *Id*. at 66–68. After weighing the interests of the respective parties, the court found that preserving the plaintiff's access to the courts outweighed the administrative notice and prejudice concerns of the individual defendants. *Id*. The court noted that the case arose out of the very incidents that the plaintiff reported on the charge form, and the individual defendants likely had constructive notice of their alleged involvement. *Id*. at 69.

Ultimately, the court held: "*in these limited circumstances*[,] the requisite administrative exhaustion of the NMHRA should not be required in order for [the p]laintiff to pursue his judicial remedies under the [NMHRA]." *Id*.

Defendant Mascaro offers two reasons why *Lobato* does not rescue Plaintiff's NMHRA claims against him here. First, he observes that just after the section of the charge form where Plaintiff provided Defendant City's address and phone number, there was "a *second* space to write in *another* name, street address, and phone number for *another defendant*," which Plaintiff left blank. ECF 52 at 4. Because Plaintiff does not explain why she left that second space blank, Defendant Mascaro urges the Court to reject her argument that she was deprived of a fair and adequate opportunity to exhaust her administrative remedies against him. *Id*. Second, Defendant Mascaro asserts that Plaintiff has neither asserted nor argued that she was unrepresented when she filed her discrimination charge. ECF 52 at 4 (citing *Flores*, 2021 U.S. Dist. LEXIS 18971, at *9 (D.N.M. Jan. 30, 2021)).

As to Defendant Mascaro's first argument, the Court notes that the section of the form to which he refers instructs the complainant to identify the "Employer, Labor Organization, Employment Agency, Apprentice Committee, or State or Local Government Agency That [She] Believe[s] Discriminated Against [Her] or Others." ECF 49 at 2. But Defendant Mascaro did not fall into any of those categories. Moreover, these were the same instructions that the New Mexico Supreme Court criticized as misleading in *Lobato*. 267 P.3d at 66, 68.

Defendant Mascaro's second argument is more persuasive. For several reasons, the Court agrees that Plaintiff's failure to assert that she was unrepresented when she filed her NMHRB Charge undermines her reliance on *Lobato*. "Courts have interpreted the 'unwary claimant' to which Lobato refers as one that filed the charge without the advice of counsel." *Delopez*, 2021 WL

873354, * 8 (Herrera, J.) (citation omitted); *see also Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F.Supp.3d 1107, 1114 (D.N.M. 2015) (Vazquez, J.) (explaining that, because the plaintiff consulted with an attorney before filing her charge, she did not fit *Lobato's* description of an "unwary plaintiff" and was therefore not excused from the "ordinary rule that a plaintiff must exhaust her administrative remedies as to each individual Defendant"); *Benavidez v. Sandia Nat'l Labs*, 212 F. Supp. 3d 1039, 1086 (D.N.M. June 27, 2016) (Browning, J.) (granting the individual defendants' motion to dismiss NMHRA claims and noting that there was "no indication that, by the time [the plaintiff] signed and submitted the Charge of Discrimination form, she had not already consulted with an attorney").

It is Plaintiff's burden to demonstrate subject matter jurisdiction and exhaustion of her NMHRA claims. Although she relies upon *Lobato* to excuse any exhaustion failure as to Defendant Mascaro, she neither alleges that she filed her NMHRB charge without the assistance of counsel nor submits evidence to that effect. *Contra Flores*, 2021 WL 308979, at *3 (Riggs, J.) (noting that the plaintiff, in opposition to a motion for judgment on the pleadings, submitted "an affidavit asserting he was not represented by counsel when he filed the charge document"); *Kibler*, 2017 WL 4410786, at *6 (Brack, J.) (considering, on motion to dismiss for failure to exhaust, an affidavit by the plaintiff in which she averred that she "received no legal advice in the course of filing the Charge of Discrimination form"); *Vigil v. City of Espanola*, No. 1:20-cv-01265-PJK-SMV, 2021 WL 124499, at *1 (D.N.M. Jan. 13, 2021) (Kelly, J.) (explaining that the "[p]laintiff's representations in his response" that he filed his administrative charge *pro se*" and its "review of the charge of discrimination . . . satisfied the court that" plaintiff had made a *prima facie* showing of subject matter jurisdiction based upon the rationale in *Lobato*). Here, the only evidence bearing on the issue of legal representation at the administrative stage is the Order of Non-Determination

that Plaintiff submitted for the Court's consideration along with her response. That Order was issued six months after Plaintiff filed her NMHRB charge and, notably, was addressed to her legal counsel. *See* ECF 49 at 3.

In the absence of any argument or evidence that (1) Plaintiff did *not* receive advice from an attorney about her NMHRB Charge or (2) that she identified Defendant Mascaro by name and outlined his discriminatory and harassing conduct in some attachment to her NMHRB charge, Plaintiff has not made a *prima facie* showing of subject matter jurisdiction with respect to her NMHRA claims against Defendant Mascaro. Accordingly, to the extent they are asserted against Defendant Mascaro, the Court dismisses without prejudice the following NMHRA claims: Count II (gender discrimination), Count IV (retaliation), Count VII (age discrimination), and Count IX (race discrimination).

### C.  Claims Asserted under 42 U.S.C. §§ 1981 and 1983

In addition to NMHRA claims for which Plaintiff fails to demonstrate exhaustion, she also asserts claims against Defendant Mascaro under 42 U.S.C. § 1981 for racial discrimination and under 42 U.S.C. § 1983 for violations of her due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. *See* ECF 38 ¶¶ 61–69. Because exhaustion is not a prerequisite to asserting these claims, they are properly challenged under Rule 12(b)(6) for failure to state a claim, and the Court will analyze them under this standard.

### i.  1981 claim

Section 1981 prohibits racial discrimination in the making and enforcing of contracts. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Beyond including a reference to Plaintiff's § 1981 claim in one heading of his Motion, Defendant Mascaro does not independently set out the elements nor develop arguments specifically related to that claim. *See* ECF 41. Instead, he couches

his race discrimination arguments in Title VII terms. *See id.* at 13. But notably, "[i]n racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Carney v. City & Cnty. of Denver,* 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar,* 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)). Thus, to establish a *prima facie* claim under §1981, like under Title VII, a plaintiff must demonstrate that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the "challenged action took place under circumstances giving rise to an inference of discrimination." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021). "A complaint raising a claim of discrimination does not need to conclusively establish a *prima facie* case of discrimination, but it must contain more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (internal quotations and citations omitted). Further, "the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *Hare* v. *Donahoe*, 608 F. App'x 627 (10th Cir. 2015) (citation omitted). The requirements for pleading a case of race discrimination are "minimal," however. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation omitted). In short, a plaintiff need only allege that the defendant "undertook a specific adverse employment action against the plaintiff on the basis of race." *Lobato v. N.M. Env't Dep't*, 838 F. Supp. 2d 1213, 1224 (D.N.M. 2011) (Black, J.) (citing *Tamayo,* 526 F.3d at 1084).

As is relevant to Plaintiff's 1981 claim, the Amended Complaint alleges that she was a "Mexican-American with brown skin," who was qualified to do her job, but "Defendant Mascaro abused his position of authority at the City to get rid of [her] so that he could put a younger, white woman in her place." ECF 38 ¶¶ 31, 54, 55. Defendant Mascaro challenges the sufficiency of these allegations with respect to the second and third elements of her race discrimination claim. ECF 41

at 13. As to the second element, he contends that Plaintiff "stops short of alleging that Defendant Mascaro terminated [her] employment," alleging only that he "somehow 'caused'" that termination. *Id.* (citing ECF 38 at 6). Defendant Mascaro insists that this allegation is belied by the City of Elephant Butte Ordinance § 30.02, which provides that "[t]he Mayor shall appoint with the consent of the City Council. . . the City Clerk-Treasurer." ECF 41, Ex. B at 1. According to Defendant Mascaro's logic, because the Mayor and City Council—not the City Manager, in which position Defendant Mascaro served—are charged with appointing the City Clerk, Plaintiff has not plausibly alleged that Defendant Mascaro terminated her and replaced her with a white woman. *Id.* at 13–14.

With respect to the third element of a § 1981 claim, Defendant Mascaro asserts that "Plaintiff fails to allege a single fact, comment, or action [on his part] related to race, ethnicity, or the color of her skin" or to otherwise make any allegations that could support an inference of racial animus by Defendant Mascaro. *Id.* at 13. And insofar as Plaintiff alleges that she was replaced by a white woman, Defendant Mascaro argues that she does not allege he selected or was involved in selecting her replacement. *Id.* at 14. Again, Defendant Mascaro suggests that he lacked the legal authority to hire Plaintiff's replacement. *Id.*

"As to [Defendant Mascaro's] possible personal liability under 1981, if there is 'some affirmative link to causally connect [him] with the discriminatory action,' a suit against [him] under 1981 can be predicated on [his] personal involvement with the discriminatory action." *Sims v. KCA, Inc.*, 28 F.3d 113, 1994 WL 266744, at *7 (10th Cir. June 17, 1994) (citing *Allen v. Denver*, 928 F.3d 978, *overruled on other grounds by Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1228 (10th Cir. 2000)). Indeed, the Tenth Circuit has observed that if a defendant harbors discriminatory intent and is personally involved in influencing the decision maker who engaged in

the adverse employment action, liability may lie under § 1981. *Id*. at *7–8. Thus, accepting as true her allegations that Defendant Mascaro intended to discriminate against her on the basis of race by "abus[ing] his authority" in a manner that caused her termination and replacement by a white woman, Plaintiff has plausibly alleged, though barely, that Defendant Mascaro racially discriminated against her. While Plaintiff certainly could have provided more detail and context as to how Defendant Mascaro influenced or participated in her termination, or facts evincing his racially discriminatory motive, the Court is nevertheless satisfied that her allegations meet the minimal burden to state a claim under § 1981 at least at the motion to dismiss stage.

### ii.  Procedural Due Process

Count XI of Plaintiff's Amended Complaint asserts that Defendant Mascaro violated her procedural due process rights. ECF 38 ¶ 62. Defendant Mascaro argues that the factual allegations of the Amended Complaint "avoid the topic of her Procedural Due Process claim, or even which position she held at the time of her termination." ECF 41 at 14 (citing ECF 38 at 2, 7). According to Defendant Mascaro, Plaintiff was an at-will employee at termination without any expectation of continued employment with the City. *Id*. As such, he submits that Plaintiff was simply not entitled to procedural due process protections. *Id*. (citing *Farthing v. City of Shawnee, Kan*., 39 F.3d 1131, 1136 (10th Cir. 1994)).

Plaintiff's response is brief. She notes that her Amended Complaint alleges she was employed by a City government and was terminated without due process. ECF 48 at 14 (citing ECF 38 at ¶¶ 6–8, 31–32, 61–64). In Plaintiff's view, these allegations state a claim for a violation of procedural due process, and Defendant Mascaro's arguments to the contrary are disputes of fact not suited to resolution at the motion to dismiss stage. *Id*.

To evaluate procedural due process claims, courts in the Tenth Circuit employ a two-step inquiry: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999) (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)). In support of her procedural due process claim, Plaintiff alleges that she had a "clearly established constitutional right to procedural due process both before and after termination," and "Defendant Mascaro . . . caused [her] termination without due process." ECF 38 ¶¶ 61–62. Defendant Mascaro characterizes these allegations as "threadbare legal conclusion[s]" that need not be accepted as true. ECF 52 at 13 (citing *Farthing*, 39 F.3d at 1136). The Court agrees.

Stripping away the legal conclusions, little more remains. For instance, the Amended Complaint does not specify which position Plaintiff held at the time of her termination or whether that position was classified as at-will. Similarly, she does not divulge the duration of the term of her position, whether she entered into a written employment contract, or whether a City ordinance or provision of state law limited the reasons for which she could be removed from her position.[3] Instead, Plaintiff suggests in conclusory fashion that because she "was employed by a City government[, she] had a constitutionally protected property interest in her continued employment." ECF 48 at 14. But the property interest inquiry is more nuanced than Plaintiff contemplates.

Certainly, public employees *may* have a property interest in continued employment, but legislative bodies may also elect *not* to confer such an interest. *See Cleveland Bd. of Educ. v.*

---

[3] Notably, "an employee may possess a property interest in public employment if she has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 576–77 (1972); *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Greene v. Barrett*, 174 F.3d 1136, 1140–41 (10th Cir. 1999)).

*Loudermill*, 470 U.S. 532, 541 (1985). And significantly, the Constitution itself does not create property interests in public employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Instead, such rights derive from independent sources such as federal, state, or municipal law, or express or implied contract. *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991). Thus, to allege a constitutionally protected property interest, a plaintiff must articulate how an independent source guaranteed her continued employment such that she had a "legitimate claim of entitlement to it" and not merely a "unilateral expectation of it." *See Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1163 (10th Cir. 2007) (quotation omitted); *Brassell v. City of Santa Rosa*, 693 F. Supp. 3d 1200 (2023). Plaintiff fails to do so here. Indeed, her allegations are conclusory as to the existence of a property interest and silent as to its source.

Defendant Mascaro suggests that City Ordinance No. § 30.07 is relevant to the Court's evaluation of Plaintiff's procedural due process claims.[4] ECF 41 at 14. That ordinance provides that "[t]he City Clerk-Treasurer serves at the pleasure of the governing body and may, subject to terms of any written employment contract, be removed by the governing body at any time *with or without cause*." *See* ECF 41, Ex. B at 2 (emphasis added). In other words, if Plaintiff was the City Clerk at the time of her termination, as her NMHRB Charge[5] suggests, Ordinance § 30.07 appears to foreclose a property interest in continued employment absent any allegation that Plaintiff had

---

[4] The Court may refer to City of Elephant Butte Ordinance § 30.07, which is neither attached to nor expressly referenced in Plaintiff's Amended Complaint, without converting Defendant Mascaro's Motion into one for summary judgment because, as a municipal ordinance, it is subject to judicial notice. *See Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503–04 (10th Cir. 1997) (concluding that a federal court may take judicial notice of municipal ordinances); *Brassell*, 693 F. Supp. 3d at 1207 n.3, 1211, n.7 (D.N.M. 2023) (Khalsa, J.) (taking judicial notice of a an ordinance that provided a City Administrator was "terminable-at-will" in assessing whether the plaintiff plausibly alleged that she had a constitutionally protected property interest in continued employment with the City) (citing *Tellabs, Inc*., 551 U.S. at 322; Fed. R. Evid. 201(b)).

[5] As discussed above, the Court can also take judicial notice of the NMHRB Charge because it is a matter of public record. *See Rodriguez*, 2023 WL 1861422, at *1.

an independent written employment contract that forbade termination without cause. *Cf. Gilbert v. Homar*, 420 U.S. 924, 928–29 (1997) ("[P]ublic employees who can be discharged *only for cause* have a constitutionally protected property interest in their tenure and cannot be fired without due process[.]" (emphasis added)).

Plaintiff characterizes Defendant Mascaro's arguments to this effect as an improper attempt to "dispute[ her] version of the facts." S*ee* ECF 48 at 14 n.6. Although the Court must accept as true all well-pleaded factual allegations, the Amended Complaint is almost entirely devoid of relevant facts to support Plaintiff's procedural due process claim. Indeed, the Amended Complaint does not even identify the job Plaintiff held at the time of her termination. As a result, the Court would be entirely hamstrung in assessing the legal issue[6] of whether Plaintiff had a constitutionally protected property interest were it not for the NMHRB Charge that Plaintiff submits for the Court's consideration. *See* ECF 49 at 2. Having taken judicial notice of the Charge, the Court takes note of Plaintiff's allegation that she held the position of City Clerk when she was wrongfully terminated. *Id*. This allegation, in turn, implicates Ordinance § 30.07, on which Defendant Mascaro relies and of which the Court may also take judicial notice. As explained above, § 30.07 appears to foreclose a property interest in continued employment. Plaintiff does not argue otherwise, resting instead on the wholly conclusory allegations of her Amended Complaint. *See* ECF 48 at 15. Thus, to the extent the Court may consider the NMHRB Charge in the context of her procedural due process claim,[7] the Court arrives at the same place:  Plaintiff has failed to

---

[6] The question of whether Plaintiff had a property interest in her City position is one of law, not of fact. S*ee Tarabishi v. McAlester Reg'l Hosp*., 827 F.2d 648, 652 (10th Cir. 1987).

[7] Where the operation of a City ordinance or state statute could negate a property interest in continued employment such that a plaintiff's procedural due process claim fails as a matter of law, courts have considered such an ordinance or law even in the context of a motion to dismiss. *See, e.g., Brassell*, 693 F. Supp. 3d at 1207 n.3, 1211, n.7 (taking judicial notice of a city ordinance not referenced in the plaintiff's complaint and assessing whether, in light of that ordinance, the plaintiff had plausibly alleged a procedural due process claim under Rule 12(b)(6)).

plausibly allege a constitutionally protected property interest in continued employment with the City.

In sum, given the sparse factual allegations in the Amended Complaint and in light of Ordinance § 30.07, Plaintiff has failed to plausibly allege a constitutionally protected property interest in her continued employment with the City. As such, she fails to state a claim with respect to the first prong of her procedural due process claim, and the Court need not assess the second. The Court will dismiss Count XI against Defendant Mascaro without prejudice to Plaintiff's ability to seek leave to amend it, as the Court cannot say with certainty that granting such leave would be futile. *Cf. Rosenfield v. HSBC Bank*, USA, 681 F.3d 1172, 1189 (10th Cir. 2012) ("[D]ismissal with prejudice is appropriate where the complaint fails to state a claim and granting leave to amend would be futile.") (brackets, ellipses, and quotation marks omitted).

### iii. Substantive Due Process

In Count XII, Plaintiff alleges that Defendant Mascaro violated her substantive due process rights by "caus[ing] the arbitrary and capricious termination of [her] employment without just cause." ECF 38 ¶ 65. In support of this claim, Plaintiff contends that "[a] public employee with a property interest in continued employment has a substantive due process right not to be terminated for arbitrary and capricious reasons." ECF 48 at 15 (citing *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998)). She goes on to suggest that Defendant Mascaro terminated her for arbitrary, capricious, and conscience-shocking reasons when he did so in retaliation for complaints about sexual harassment. *Id*. at 15–16.

Plaintiff's failure to plausibly allege the existence of a property interest in continued employment with the City impacts the colorability of her substantive due process claims, just as it does her procedural due process claims. *See Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 476 (10th

Cir. 1978). Having failed to plausibly allege an underlying property interest, *see supra* Part IV.C.ii, Plaintiff fails to state a claim for a violation of her substantive due process rights. *See Brenna*, 589 F.2d at 476 ("In order to present a claim of denial of substantive due process by a discharge for arbitrary or capricious reasons, a . . . property interest must be present to which the protection of due process can attach.").

Likewise, Plaintiff fails to overcome Defendant Mascaro' assertion of qualified immunity in the context of this claim. Defendant Mascaro contends that because Plaintiff fails to allege facts to support her substantive due process claim, "it would be difficult if not impossible for the Court to find that there was established relevant precedent at the time squarely governing the particular circumstances and demonstrating the violative nature of the particular conduct at issue." ECF 41 at 15 (citing *Cummings v. Dean*, 913 F.3d 1227, 1240–41 (10th Cir. 2019)). In response, Plaintiff outlines certain facts which she contends state a claim for a substantive due process violation, including that Defendant Mascaro, as she puts it, "sexually harassed" her, did not stop when she asked him to, and orchestrated her termination in retaliation for her complaints about his sexual harassment. ECF 48 at 15–16. Yet Plaintiff points to no on-point authority that would suggest that Defendant Mascaro's alleged actions constitute a clearly established violation of her substantive due process rights. *See id. See also Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) ("[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."). Heeding the Tenth Circuit's instruction to be especially circumspect when considering a qualified immunity defense to a substantive due process claim, *see Cummings*, 913 F.3d at 1241–42, the Court concludes that Plaintiff has failed to satisfy her qualified immunity burden here. Accordingly, the Court will dismiss Count XII against Defendant

Mascaro with prejudice.

### D. Fees

In the closing paragraph of his Motion, Defendant Mascaro seeks an award of "costs and reasonable attorney fees for defending against this action." ECF 41 at 16. Plaintiff counters that even if Defendant Mascaro's Motion were granted, which it is in part, he has failed to articulate the legal basis for his request for costs and fees. ECF 48 at 16–17. Defendant Mascaro does not, for instance, indicate that he makes his costs and fees request as a prevailing party under Title VII, nor could he. Similarly, he does not justify his request by characterizing Plaintiff's § 1983 claims as "frivolous, unreasonable, or without foundation." *See Fox v. Vice*, 563 U.S. 826, 833 (2011). The Court will deny Defendant Mascaro's undeveloped, unsupported request for costs and fees.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Dismiss is **[ECF 41] is GRANTED IN PART** as follows:

(1) Count V (First Amendment Retaliation) is dismissed with prejudice;

(2) Count I (Title VII Sex Discrimination), Count III (Title VII Retaliation), Count VI (ADEA Age Discrimination), and Count VIII (Title VII Race Discrimination) are dismissed with prejudice insofar as those claims are asserted against Defendant Mascaro;

(3) Count II (NMHRA Gender Discrimination), Count IV (NMHRA Retaliation), Count VII (NMHRA age discrimination), and Count IX (NMHRA Race Discrimination) are dismissed without prejudice insofar as those claims are asserted against Defendant Mascaro;

(4) Count XI (Procedural Due Process) is dismissed without prejudice insofar as it is asserted against Defendant Mascaro;

(5) Count XII (Substantive Due Process) is dismissed with prejudice insofar as it is asserted

against Defendant Mascaro.

   **IT IS FURTHER ORDERED** that the Motion to Dismiss is **[ECF 41] is DENIED** in all

other respects.

   **SO ORDERED.**

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***